Logan D. Smith (SBN 212041)
lsmith@mcnamarallp.com
Edward Chang (SBN 268204)
echang@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 1600
San Diego, California 92101
Telephone: 619-269-0400
Facsimile: 619-269-0401

*Attorneys for Plaintiff Thomas W. McNamara
in his capacity as the Court-appointed Receiver
for PLCMGMT LLC, dba Prometheus Law*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS W. MCNAMARA, as the Court-Appointed Receiver for PLCMGMT LLC, dba PROMETHEUS LAW,<br><br>Plaintiff,<br><br>v.<br><br>TERESITA CATIPAY; ANTHONY CATIPAY; CHRISTINA CATIPAY; MARK CATIPAY; YINGJIE MAO; AND BEVERLY PALACIO,<br><br>Defendants. | Case No. 2:17-cv-04347-TJH (FFMx)<br><br>**RECEIVER'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT YINGJIE MAO**<br><br>Judge: Hon. Terry J. Hatter, Jr.<br>Ctrm.: 9B<br>Date: March 12, 2018<br>Time: UNDER SUBMISSION<br><br>Related Cases:<br><br>*SEC v. PLCMGMT LLC, dba Prometheus Law, et al.*<br>U.S. District Court (C.D. Cal.),<br>Case No. 2:16-cv-02594-TJH (FFMx)<br><br>*McNamara v. Allen, et. al.*<br>U.S. District Court (C.D. Cal.),<br>Case No. 2:17-cv-02858-TJH (FFMx)<br><br>*McNamara v. Prometheus Capital Partners, LLC*<br>U.S. District Court (C.D. Cal.)<br>Case No. 2:17-cv-04821-TJH (FFMx) |

# Table of Contents

Page

I. INTRODUCTION ...................................................................................... 1
II. FACTS ....................................................................................................... 1
   A. Background of Prometheus ............................................................. 1
   B. Prometheus' Bank Accounts ........................................................... 3
      1. Wells Fargo 4489 .................................................................. 3
      2. Wells Fargo 8505 .................................................................. 3
      3. Wells Fargo 7912 .................................................................. 3
      4. Chase 5529 ............................................................................ 3
      5. Chase 9071 ............................................................................ 4
      6. Chase 1931 ............................................................................ 4
   C. Transfers to Mao .............................................................................. 4
      1. Mao Received $40,940 from Wells Fargo 8505 Account ..... 4
      2. Mao Received $99,450 from Wells Fargo 7912 Account ..... 5
      3. Mao Received $10,000 from Chase 5529 Account ............... 7
      4. Mao Benefited by $130,000 When Catipay Sent Wire Transfers to Her Mother in China ......................................... 7
      5. Mao Benefited by $40,243.94 When Catipay Paid Her Car Loan ................................................................................ 8
      6. Mao Benefited by $6,700 When Catipay Paid Her Rent ...... 9
   D. Clawback Demand and Mao's Sale of Condo ................................. 9
   E. Mao Failed to Respond to Discovery Requests and Failed to Appear at Her Deposition ............................................................... 10
III. ARGUMENT ........................................................................................... 11
   A. Receiver's Requests for Admissions Deemed Admitted ................ 12
   B. Uniform Voidable Transfer Act ..................................................... 13
   C. Quasi-Contract Claim for Restitution ............................................ 14
IV. CONCLUSION ....................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................... 11

*Compass Bank v. Petersen*,
  886 F. Supp. 2d 1186 n.3 (C.D. Cal. 2012) ........................................... 13

*Conlon v. United States*,
  474 F.3d 616 (9th Cir. 2007) ............................................................ 12, 13

*Dizon v. Asiana Airlines, Inc.*,
  240 F. Supp. 3d 1036 (C.D. Cal. 2017) .................................................. 12

*Donnell v. Kowell*,
  533 F.3d 762 (9th Cir. 2008) ............................................................ 14, 15

*ESG Capital Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) ................................................................ 15

*Gerlinger v. Amazon.com, Inc.*,
  311 F. Supp. 2d 838 (N.D. Cal. 2004) .................................................... 15

*Rydstrom v. Fed. Ins. Co.*,
  263 F. Supp. 3d 868 (C.D. Cal. 2017) .................................................... 11

**Statutes**

Cal. Civ. Code § 3439.04(a)(1) ....................................................................... 14

**Rules**

Fed. R. Civ. P. 36(a)(3) ........................................................................... 12, 13

Fed. R. Civ. P. 36(b) ....................................................................................... 12

Fed. R. Civ. P. 56(a) ....................................................................................... 11

# I.
# INTRODUCTION

By the Complaint filed June 12, 2017 (ECF No. 1), Thomas W. McNamara, the court-appointed receiver of PLCMGMT LLC dba Prometheus Law ("Plaintiff" or "Receiver") seeks, *inter alia*, to clawback as fraudulent transfers $377,333 of Prometheus funds disbursed to or for the benefit of Defendant Yingjie Mao ("Mao"), the former girlfriend of Prometheus principal James Catipay.

The Receiver now moves for summary judgment as there remain no genuine issues of material fact as to claims against Mao as follows:

- Mao is deemed to have admitted all the facts in the Receiver's Requests for Admission served December 13, 2017 because she has failed, despite an extension, to respond to those Requests for Admission. As such, she has admitted all the predicate facts of the Receiver's claims that she received Prometheus funds totaling $337,333, that those transfers were gifts, that Prometheus was a fraud and a Ponzi scheme, and that she did not give equivalent value.
- The bank records submitted with the motion further confirm the actual transfers of $337,333 of Prometheus funds to or for the benefit of Mao.

# II.
# FACTS

**A.   Background of Prometheus**

PLCMGMT LLC dba Prometheus Law ("Prometheus") is a California limited liability company. *See* Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment ("SUF"), filed concurrently, at ¶ 1. James A. Catipay ("Catipay") was the owner and managing member of Prometheus. SUF at ¶ 2. David A. Aldrich ("Aldrich") was its president and chief marketing officer. SUF at ¶ 3. From December 2013 through March 2016,

Prometheus sold securities to investors promising 100% to 300% returns. The securities purportedly funded marketing to identify potential plaintiffs in tort actions against medical device and pharmaceutical drug manufacturers. SUF at ¶ 4. These securities were not registered with the U.S. Securities and Exchange Commission ("SEC") and the sales of the securities were not limited to accredited investors. SUF at ¶ 5. Prometheus raised approximately $12 million from investors with net losses of $11.7 million. SUF at ¶ 6.

At least as of October 2014, Catipay and Aldrich were aware that Prometheus was not generating sufficient revenues to timely repay investors. In October 2014, Aldrich wrote an e-mail to Catipay stating that "as settlements have been pushed out our ability to pay returns from those settlements will have to be pushed out." SUF at ¶ 7. As a result, Catipay and Aldrich made Ponzi-type payments to repay early investors. Specifically, in December 2014, Catipay and Aldrich paid $120,000 in returns to investors by using funds collected from more recent investors. Catipay and Aldrich have both testified under oath that these were Ponzi payments. SUF at ¶ 8.

On April 15, 2016, the SEC sued Prometheus, Catipay, and Aldrich, alleging various violations of federal securities law. SUF at ¶ 9. On April 26, 2016, the Court entered the Preliminary Injunction, which appointed Thomas W. McNamara as permanent receiver of Prometheus and its subsidiaries and affiliates. SUF at ¶ 10.

Catipay and Aldrich each entered into a stipulated judgment. SUF at ¶ 11. Aldrich consented not to deny any allegations in the Complaint. SUF at ¶ 12. Catipay agreed not to argue that he did not violate the federal securities laws as alleged in the Complaint. SUF at ¶ 13.

In subsequent criminal proceedings, Catipay pleaded guilty to one count of conspiracy to commit securities fraud and sentenced to prison for twenty-four

months.  SUF at ¶ 14.  Aldrich pleaded guilty to one count of conspiracy to commit securities fraud and sentenced to eighteen months.  SUF at ¶ 15.

### B.     Prometheus' Bank Accounts

Investors deposited money from the sale of the unregistered securities into a Prometheus bank account at Wells Fargo, Account No. 4489.  This account was the source of all funds for other accounts belonging to Prometheus and Catipay.  The full universe of accounts was as follows:

#### 1.     Wells Fargo 4489

Prometheus had a business checking account ending in 4489 at Wells Fargo ("Wells Fargo 4489").  Investors deposited funds into the Wells Fargo 4489 account.  This account did not receive any deposits from sources other than Prometheus investors.  SUF at ¶ 16.

#### 2.     Wells Fargo 8505

Also at Wells Fargo, Prometheus had a business checking account ending in 8505 ("Wells Fargo 8505"), which was used as an operating account.  The Wells Fargo 8505 account contained funds that had been transferred from the Wells Fargo 4489 account, which was its sole source of funding.  SUF at ¶ 17.

#### 3.     Wells Fargo 7912

Catipay had a personal checking account ending in 7912 at Wells Fargo ("Wells Fargo 7912").  The Wells Fargo 7912 account contained funds that had been transferred from the Wells Fargo 8505, which was its sole source of funding.  SUF at ¶ 18.

#### 4.     Chase 5529

Catipay had a personal checking account ending in 5529 at JPMorgan Chase Bank, N.A. ("Chase 5529").  The Chase 5529 account contained funds that had been transferred from the Wells Fargo 7912 account, which was its sole source of funding.  SUF at ¶ 19.

5. Chase 9071

Catipay had a personal savings account ending in 9071 at JPMorgan Chase Bank, N.A. ("Chase 9071"). The Chase 9071 account contained funds that had been transferred from the Chase 5529 account and the Chase 1931 account. SUF at ¶ 20.

6. Chase 1931

Catipay had another personal savings account ending in 1931 at JPMorgan Chase Bank, N.A. ("Chase 1931"). The Chase 1931 account contained funds that had been transferred from the Chase 5529 account and the Chase 9071 account. SUF at ¶ 21.

Mao received payments from four of the Prometheus accounts (Wells Fargo 8505, Wells Fargo 7912, Chase 5529, and Chase 9071 accounts). The funds for all of these accounts trace back to the Wells Fargo 4489 account, which was funded solely with funds from Prometheus investors. SUF at ¶ 22.

**C. Transfers to Mao**

Mao was Catipay's girlfriend. SUF at ¶ 23. From September 24, 2014 to April 6, 2016, she received or benefited by a total of $327,333.94 of Prometheus funds disbursed by Catipay and/or Prometheus. Mao herself received $150,390 and benefited from $130,000 sent to Mao's mother, car payments of $40,243.94 and rent payments of $6,700.

1. Mao Received $40,940 from Wells Fargo 8505 Account

From February 25, 2015 to March 10, 2016, Mao received nineteen transfers totaling $40,940 from Prometheus' Wells Fargo 8505 account. These transfers were all deposited into Mao's account ending in 5386 at JPMorgan Chase Bank, N.A. A chart summarizing these transfers is below:

| Date | Payee | Amount | Citation |
|---|---|---|---|
| February 25, 2015 | Yingjie Mao | $1,000.00 | SUF at ¶ 24 |
| March 27, 2015 | Yingjie Mao | $2,200.00 | SUF at ¶ 25 |

| Date | Payee | Amount | Citation |
|---|---|---|---|
| April 8, 2015 | Yingjie Mao | $240.00 | SUF at ¶ 26 |
| April 15, 2015 | Yingjie Mao | $2,000.00 | SUF at ¶ 27 |
| April 21, 2015 | Yingjie Mao | $2,000.00 | SUF at ¶ 28 |
| July 20, 2015 | Yingjie Mao | $2,000.00 | SUF at ¶ 29 |
| July 21, 2015 | Yingjie Mao | $8,000.00 | SUF at ¶ 30 |
| July 31, 2015 | Yingjie Mao | $2,500.00 | SUF at ¶ 31 |
| August 7, 2015 | Yingjie Mao | $1,000.00 | SUF at ¶ 32 |
| August 20, 2015 | Yingjie Mao | $2,000.00 | SUF at ¶ 33 |
| September 3, 2015 | Yingjie Mao | $2,000.00 | SUF at ¶ 34 |
| September 9, 2015 | Yingjie Mao | $2,000.00 | SUF at ¶ 35 |
| September 15, 2015 | Yingjie Mao | $2,000.00 | SUF at ¶ 36 |
| September 25, 2015 | Yingjie Mao | $2,000.00 | SUF at ¶ 37 |
| October 23, 2015 | Yingjie Mao | $2,000.00 | SUF at ¶ 38 |
| December 18, 2015 | Yingjie Mao | $2,000.00 | SUF at ¶ 39 |
| January 28, 2016 | Yingjie Mao | $2,000.00 | SUF at ¶ 40 |
| March 4, 2016 | Yingjie Mao | $2,000.00 | SUF at ¶ 41 |
| March 10, 2016 | Yingjie Mao | $2,000.00 | SUF at ¶ 42 |
| | **Total:** | **$40,940.00** | |

2. <u>Mao Received $99,450 from Wells Fargo 7912 Account</u>

From September 27, 2014 to January 23, 2016, Mao received thirty-five checks totaling $89,450 and one wire $10,000 wire transfer from Catipay's Wells Fargo 7912 account. A chart summarizing these transfers is below:

| Date | Payee | Amount | Check No. | Citation |
|---|---|---|---|---|
| 9/27/2014 | Yingjie Mao | $1,500.00 | 162 | SUF at ¶ 43 |
| 10/12/2014 | Yingjie Mao | $400.00 | 165 | SUF at ¶ 44 |
| 10/15/2014 | Yingjie Mao | $450.00 | 168 | SUF at ¶ 45 |

| Date | Payee | Amount | Check No. | Citation |
|---|---|---|---|---|
| 10/21/2014 | Yingjie Mao | $1,000.00 | 170 | SUF at ¶ 46 |
| 10/29/2014 | Yingjie Mao | $700.00 | 173 | SUF at ¶ 47 |
| 11/4/2014 | Yingjie Mao | $500.00 | 174 | SUF at ¶ 48 |
| 11/10/2014 | Yingjie Mao | $500.00 | 175 | SUF at ¶ 49 |
| 12/10/2014 | Yingjie Mao | $500.00 | 180 | SUF at ¶ 50 |
| 12/18/2014 | Yingjie Mao | $600.00 | 181 | SUF at ¶ 51 |
| 12/29/2014 | Yingjie Mao | $1,300.00 | 187 | SUF at ¶ 52 |
| 1/2/2015 | Yingjie Mao | $500.00 | 184 | SUF at ¶ 53 |
| 1/7/2015 | Yingjie Mao | $500.00 | 186 | SUF at ¶ 54 |
| 1/8/2015 | Yingjie Mao | $500.00 | 188 | SUF at ¶ 55 |
| 1/14/2015 | Yingjie Mao | $500.00 | 189 | SUF at ¶ 56 |
| 1/16/2015 | Yingjie Mao | $500.00 | 190 | SUF at ¶ 57 |
| 1/22/2015 | Yingjie Mao | $1,000.00 | 191 | SUF at ¶ 58 |
| 1/27/2015 | Yingjie Mao | $500.00 | 192 | SUF at ¶ 59 |
| 1/28/2015 | Yingjie Mao | $500.00 | 194 | SUF at ¶ 60 |
| 2/3/2015 | Yingjie Mao | $500.00 | 195 | SUF at ¶ 61 |
| 2/6/2015 | Yingjie Mao | $500.00 | 196 | SUF at ¶ 62 |
| 3/31/2015 | Yingjie Mao | $20,000.00 | 211 | SUF at ¶ 63 |
| 3/31/2015 | Yingjie Mao | $1,300.00 | 212 | SUF at ¶ 64 |
| 5/3/2015 | Yingjie Mao | $30,000.00 | 217 | SUF at ¶ 65 |
| 5/18/2015 | Yingjie Mao | $2,000.00 | 219 | SUF at ¶ 66 |
| 6/8/2015 | Yingjie Mao | $2,000.00 | 225 | SUF at ¶ 67 |
| 6/22/2015 | Yingjie Mao | $2,000.00 | 226 | SUF at ¶ 68 |
| 6/29/2015 | Yingjie Mao | $2,000.00 | 228 | SUF at ¶ 69 |
| 6/29/2015 | Yingjie Mao | $1,400.00 | 229 | SUF at ¶ 70 |
| 7/1/2015 | Yingjie Mao | $10,000.00 | Wire | SUF at ¶ 71 |

| Date | Payee | Amount | Check No. | Citation |
|---|---|---|---|---|
| 7/5/2015 | Yingjie Mao | $2,000.00 | 231 | SUF at ¶ 72 |
| 7/13/2015 | Yingjie Mao | $2,000.00 | 232 | SUF at ¶ 73 |
| 8/4/2015 | Yingjie Mao | $2,000.00 | 236 | SUF at ¶ 74 |
| 8/10/2015 | Yingjie Mao | $3,000.00 | 237 | SUF at ¶ 75 |
| 8/25/2015 | Yingjie Mao | $3,800.00 | 238 | SUF at ¶ 76 |
| 10/7/2015 | Yingjie Mao | $2,000.00 | 256 | SUF at ¶ 77 |
| 1/23/2016 | Yingjie Mao | $1,000.00 | 264 | SUF at ¶ 78 |
|  | **Total:** | **$99,450.00** |  |  |

3. <u>Mao Received $10,000 from Chase 5529 Account</u>

Mao also received two wire transfers totaling $10,000 from Catipay's Chase 5529 account. A chart summarizing these transfers is below:

| Date | Payee | Amount | Citation |
|---|---|---|---|
| 10/1/2015 | Yingjie Mao | $4,000.00 | SUF at ¶ 79 |
| 11/12/2015 | Yingjie Mao | $6,000.00 | SUF at ¶ 80 |
|  | **Total:** | **$10,000.00** |  |

4. <u>Mao Benefited by $130,000 When Catipay Sent Wire Transfers to Her Mother in China</u>

From September 24, 2014 to April 6, 2016, Catipay sent thirteen wire transfers totaling $130,000 to Mao's mother, Jun Weng, in China. A chart summarizing these transfers is below:

| Date | Account | Payee | Amount | Citation |
|---|---|---|---|---|
| 9/24/2014 | -7912 | Jun Weng | $10,000.00 | SUF at ¶ 82 |
| 12/5/2014 | -7912 | Jun Weng | $10,000.00 | SUF at ¶ 83 |
| 3/25/2015 | -7912 | Jun Weng | $10,000.00 | SUF at ¶ 84 |
| 6/3/2015 | -7912 | Jun Weng | $10,000.00 | SUF at ¶ 85 |
| 7/10/2015 | -7912 | Jun Weng | $10,000.00 | SUF at ¶ 86 |

| Date | Account | Payee | Amount | Citation |
|---|---|---|---|---|
| 7/10/2015 | -8505 | Jun Weng | $10,000.00 | SUF at ¶ 87 |
| 8/3/2015 | -5529 | Jun Weng | $10,000.00 | SUF at ¶ 88 |
| 9/8/2015 | -5529 | Jun Weng | $10,000.00 | SUF at ¶ 89 |
| 11/2/2015 | -5529 | Jun Weng | $10,000.00 | SUF at ¶ 90 |
| 12/17/2015 | -9071 | Jun Weng | $10,000.00 | SUF at ¶ 91 |
| 2/16/2016 | -5529 | Jun Weng | $10,000.00 | SUF at ¶ 92 |
| 3/8/2016 | -5529 | Jun Weng | $10,000.00 | SUF at ¶ 93 |
| 4/6/2016 | -5529 | Jun Weng | $10,000.00 | SUF at ¶ 94 |
| | | **Total:** | **$130,000.00** | |

5. <u>Mao Benefited by $40,243.94 When Catipay Paid Her Car Loan</u>

From April 21, 2015 to September 9, 2015, Catipay made eighteen payments totaling $40,243.94 on behalf of Mao for an auto loan at CRB Auto from the Wells Fargo 7912 account. A chart summarizing these transfers is below

| Date | Payee | Amount | Citation |
|---|---|---|---|
| 4/21/2015 | CRB Auto | $2,000.00 | SUF at ¶ 96 |
| 4/23/2015 | CRB Auto | $2,000.00 | SUF at ¶ 97 |
| 4/27/2015 | CRB Auto | $1,300.00 | SUF at ¶ 98 |
| 5/27/2015 | CRB Auto | $1,527.10 | SUF at ¶ 99 |
| 7/10/2015 | CRB Auto | $2,290.65 | SUF at ¶ 100 |
| 7/20/2015 | CRB Auto | $2,500.00 | SUF at ¶ 101 |
| 7/30/2015 | CRB Auto | $2,500.00 | SUF at ¶ 102 |
| 8/7/2015 | CRB Auto | $2,500.00 | SUF at ¶ 103 |
| 8/17/2015 | CRB Auto | $2,500.00 | SUF at ¶ 104 |
| 8/24/2015 | CRB Auto | $2,500.00 | SUF at ¶ 105 |
| 8/26/2015 | CRB Auto | $2,500.00 | SUF at ¶ 106 |

| Date | Payee | Amount | Citation |
|---|---|---|---|
| 8/28/2015 | CRB Auto | $2,500.00 | SUF at ¶ 107 |
| 8/31/2015 | CRB Auto | $2,500.00 | SUF at ¶ 108 |
| 9/1/2015 | CRB Auto | $2,500.00 | SUF at ¶ 109 |
| 9/1/2015 | CRB Auto | $2,500.00 | SUF at ¶ 109 |
| 9/3/2015 | CRB Auto | $2,500.00 | SUF at ¶ 110 |
| 9/8/2015 | CRB Auto | $2,500.00 | SUF at ¶ 111 |
| 9/9/2015 | CRB Auto | $1,126.19 | SUF at ¶ 112 |
| | **Total:** | **$40,243.94** | |

6. <u>Mao Benefited by $6,700 When Catipay Paid Her Rent</u>

Using funds from Prometheus investors, Mao also benefited by having Catipay pay her rent. Catipay made five payments to Mao's landlord from the Wells Fargo 7912 account totaling $6,700. A chart summarizing these transfers is below:

| Date | Payee | Amount | Check No. | Citation |
|---|---|---|---|---|
| 10/25/2014 | JJ&G Corp. | $1,300.00 | 172 | SUF at ¶ 114 |
| 11/25/2014 | JJ&G Corp. | $1,300.00 | 176 | SUF at ¶ 115 |
| 3/1/2015 | J&J Corp. | $1,300.00 | 206 | SUF at ¶ 116 |
| 4/28/2015 | JJ&G Corp. | $1,400.00 | 215 | SUF at ¶ 117 |
| 5/29/2015 | JJ&G Corp. | $1,400.00 | 221 | SUF at ¶ 118 |
| | **Total:** | **$6,700.00** | | |

**D. Clawback Demand and Mao's Sale of Condo**

On July 15, 2016, counsel for the Receiver sent Mao a clawback letter, enclosing a copy of the Preliminary Injunction and informing her she was in possession of receivership assets which had been frozen and could not be transferred. SUF at ¶ 122. In response to the clawback letter, Mao briefly retained counsel who confirmed this representation to the Receiver's counsel on July 29,

2016, but then called back the very next day to advise he no longer represented Mao. SUF at ¶ 123.

Mao was the titled owner of a condominium property at 413 Pomelo Avenue, Unit 9, Monterey Park, CA (the "Monterey Park Condo") which she purchased on July 17, 2015. SUF at ¶ 121. That purchase was made with $50,000 of Prometheus funds as follows:

- On or about March 31, 2015, Mao received a check in the amount of $20,000 from Catipay's Wells Fargo 7912 account which included "Down Payment" in the memo line. SUF at ¶ 119.
- On or about May 3, 2015, Mao received a check in the amount of $30,000 from Catipay's Wells Fargo 7912 account which included "Loan Advance Fee" in the memo line. SUF at ¶ 120.

Less than two weeks after receiving the clawback letter, Mao signed a residential listing agreement on July 27, 2016 to sell the Monterey Park Condo. SUF at ¶ 124. The Monterey Park Condo sold for $470,000 and the sale closed on August 23, 2016. After commissions, title and escrow charges, Mao received $442,262. SUF at ¶ 125.

**E.   Mao Failed to Respond to Discovery Requests and Failed to Appear at Her Deposition**

On December 13, 2017, the Receiver's first set of written discovery requests (i.e., Interrogatories, Requests for Production, Requests for Admissions) were served on Mao via e-mail and mail. Mao's deadline to respond was January 16, 2018. SUF at ¶ 126.

On December 22, 2017, the Receiver's Notice of Deposition of Mao, to be held January 26, 2018 at 9:00 a.m. in Los Angeles, was served on her via e-mail and mail. SUF at ¶ 127. On Saturday, January 20, 2018, Mao responded that she could not attend the deposition because she was out of state. Counsel for the Receiver sent e-mails to Mao on January 22nd and January 25th informing her that

1 discovery was scheduled to close on January 31st and requested another date for
2 her deposition. SUF at ¶ 128.
3       When Mao did not respond to these e-mails, a letter was sent to Mao on
4 January 25th again asking her to provide an alternative deposition date before the
5 close of discovery and requested a response by 9:00 p.m. Our letter also informed
6 Mao that she had failed to respond to the Receiver's Requests for Admissions,
7 which were now deemed admitted. Recognizing that Mao was proceeding *pro se*,
8 we provided her until January 31 to respond to the outstanding discovery requests.
9 SUF at ¶ 129. On January 25, 2018 at 11:13 p.m., Mao responded stating that she
10 would not attend the deposition and "shall have nothing more to say." SUF at
11 ¶ 130.

12 ## III.
13 ## ARGUMENT

14       Summary judgment is appropriate on Counts I and III against Mao because
15 there is "no genuine dispute as to any material fact and that the movant is entitled
16 to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are "facts
17 that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477
18 U.S. 242, 248 (1986). "When the moving party has carried its burden under Rule
19 56(c), the opposing party must show more than some metaphysical doubt as to the
20 material facts; the nonmoving party must come forward with '*specific facts*
21 *showing that there is a genuine issue for trial.*'" *Rydstrom v. Fed. Ins. Co.*, 263 F.
22 Supp. 3d 868, 872 (C.D. Cal. 2017) (citing *Matsushita Elec. Indus. Co. v. Zenith*
23 *Radio Corp.* 475 U.S. 574, 586-87 (1986)) (emphasis in original). "A genuine
24 issue of material fact must be more than a scintilla of evidence, or evidence that is
25 merely colorable or not significantly probative." *Dizon v. Asiana Airlines, Inc.*,
26 240 F. Supp. 3d 1036, 1040 (C.D. Cal. 2017) (citation omitted).
27       Here, there is no genuine dispute regarding any material fact relating to
28 Mao's receipt of $327,333 in gifts and payments from Catipay and Prometheus.

1  She is liable under the Uniform Voidable Transfer Act because she did not provide
2  any reasonably equivalent value for these gifts and payments that were derived
3  from defrauded investors. Since Mao cannot cite any evidence to dispute the
4  receipt of these fraudulent transfers, the Receiver is entitled to summary judgment
5  against Mao as a matter of law.

### A.   Receiver's Requests for Admissions Deemed Admitted

Requests for admission are deemed "admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). "Unanswered requests for admission may be relied on as the basis for granting summary judgment." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (citation omitted).

As noted above, the Receiver's First Set of Requests for Admissions to Mao was served on December 13, 2017 via e-mail and mail with a response deadline of January 16, 2018, but Mao chose not to respond and never requested additional time to respond to the Requests for Admissions or any of the other outstanding written discovery requests.

After Mao's email of January 20, 2018 that she would not attend her deposition, counsel for the Receiver sent Mao a letter on January 25th informing her that the Requests for Admission were deemed admitted based on her failure to respond, but in recognition of her *pro se* status, extended her time to respond to January 31, 2018 which was the close of discovery date. Specifically, Mao was informed:

> [B]y failing to respond to the Requests for Admission, they are now admitted and conclusively established under Rule 36 of the Federal Rules of Civil Procedure. At this point, you would need to make a motion to the Court to seek to withdraw or amend these admissions. . . .

> Discovery will formally close on January 31, 2018; thereafter, we must file our motion for summary judgment against you by February 12, 2018. In that motion, we will ask the court to enter a judgment against you in excess of $300,000 and present all of the evidence we have gathered. This will include your failure to respond on multiple fronts and your admissions. In recognition that you are proceeding *pro se*, we are giving you a final opportunity to produce your initial disclosures and respond to Plaintiff's Written Discovery Requests by the close of discovery on January 31, 2018.

Even though Mao had seven weeks to respond to the Receiver's Requests for Admission, she failed to respond. Accordingly, the Receiver's Requests for Admissions must be deemed admitted. *See* Fed. R. Civ. P. 36(a)(3); *Conlon* 474 F.3d at 618 (affirming the district court's entry of summary judgment after responding party failed to respond to requests for admission); *Compass Bank v. Petersen*, 886 F. Supp. 2d 1186, 1190 n.3 (C.D. Cal. 2012) ("Unanswered requests for admission are deemed admitted by Rule 36(a)(3) and may be relied on as the basis for granting summary judgment." (citation and internal quotation marks omitted)).

### B. Uniform Voidable Transfer Act

A transfer made by a debtor is voidable as to a creditor if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor. *See* Cal. Civ. Code § 3439.04(a)(1). "The mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud." *Donnell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) (alteration, citation, and internal quotation marks omitted). Additionally, since all amounts received from investors were received as part of a scheme to sell unregistered securities without a license in violation of federal and state law, all amounts were received illegally and are subject to disgorgement. Accordingly, any subsequent transfer of those amounts to Mao was a transfer with actual intent to hinder, delay, or defraud the investors of Prometheus – the creditors. Prometheus' and Catipay's payments to Mao were made with the actual intent to hinder, delay, or defraud creditors – the

investors of Prometheus. All funds received by Mao or for the benefit of Mao are voidable transfers in violation of California's Uniform Voidable Transactions Act and should be returned to the Receiver. *See* Cal. Civ. Code § 3439.04(a)(1).

Transfers to Mao are also voidable under the constructive fraud theory because Prometheus did not receive "a reasonably equivalent value in exchange for the transfer . . . ." Cal. Civ. Code § 3439.04(a)(2). Additionally, at the time of the transfers to Mao, Prometheus' assets were unreasonably small in relation to upcoming obligations to its investors. Prometheus intended to incur, and believed and reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due. Since Prometheus' assets were subject to disgorgement to investors because they were obtained through violations of securities law, Prometheus did not lawfully hold those assets. Transfers made pursuant to a Ponzi scheme "generally establishes that the scheme operator was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." *Donnell*, 533 F.3d at 770-71 (alteration, citation, and internal quotation marks omitted). Mao did not take the transfers from Catipay and Prometheus in good faith or for a reasonably equivalent value. Prometheus did not receive any valuable consideration for these transfers to Mao. Therefore, each transfer that Mao received or benefited from should be returned to the Receiver.

### C. Quasi-Contract Claim for Restitution

"Under California law, unjust enrichment is an action in quasi-contract." *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (citing *Paracor Fin. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)). "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's

expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016) (citation omitted).

Here, Mao received or benefited by $327,333.94.  She received $150,390 in the form of direct transfers or checks from Prometheus or Catipay.  Additionally, $130,000 was sent to Mao's mother in China.  $40,243.94 was paid towards Mao's car loan.  Mao's landlord also received $6,700.  These funds were all derived from Prometheus' investors.  Mao was the beneficiary of these gifts and Prometheus did not receive any equivalent value in exchange.  Accordingly, Mao is unjustly retaining these benefits at the expense of Prometheus' investors.  Therefore, the Court should order Mao to return $327,333.94.

## IV.
## CONCLUSION

For all the above reasons, the Receiver respectfully requests that summary judgment be entered in his favor and against Mao on Counts I and III of the Complaint.

Dated:  February 12, 2018            MCNAMARA SMITH LLP

By:   /s/ Edward Chang
    Edward Chang
    *Attorneys for Plaintiff Thomas W. McNamara in his capacity as the Court-appointed Receiver for PLCMGMT LLC, dba Prometheus Law*